**CHARLES L. FIRESTEIN, P.C.**
Charles L. Firestein, #002986
7227 N 16th Street, Ste 124
Phoenix, Arizona 85020
[602] 235-9000
Fax (602) 235-9040
charles@firesteinpc.com

Attorney for Movant AMERICAN HONDA FINANCE CORPORATION ("AHFC")

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE:<br>**ELIZABETH ANN HARKISON,**<br>  Debtor,<br>_____<br>**AMERICAN HONDA FINANCE CORPORATION ("AHFC"), its assignees and/or successors in interest,**<br>  Movant,<br>vs.<br>**ELIZABETH ANN HARKISON, DEBTOR; MAUREEN GAUGHAN, TRUSTEE,**<br>  Respondents. | **CHAPTER 7 PROCEEDINGS**<br><br>**CASE NO: 2:11-bk-26980-RTB** |

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

COMES NOW, AMERICAN HONDA FINANCE CORPORATION ("AHFC"), its assignees and/or successors in interest (Movant), hereby moves and applies to the court for an order modifying the stay provided by 11 U.S.C. § 362 and the other stays against lien enforcement with respect to the property described below, and proceeds; and enjoining or conditioning the use, sale, or lease of such property, as necessary to provide adequate protection of Movant's interest in the property.

The relief requested is more particularly set forth in the following memorandum of

points and authorities, upon which this motion and application is based.

RESPECTFULLY SUBMITTED this January 9, 2013.

CHARLES L. FIRESTEIN, P.C.

/s/ Charles L. Firestein  #002986
Charles L. Firestein, Esq.
Attorney for Movant

**MEMORANDUM OF POINTS AND AUTHORITIES**

**FACTS:** The facts relevant to Movant's Motion for Relief from the Automatic Stay are summarized as follows:

1. The Debtor originally filed a Chapter 7 Bankruptcy under the Bankruptcy Code on September 21, 2011.

2. On or about November 7, 2009, said Debtor entered into a Motor Vehicle Retail Installment Sales Contract and Purchase Money Security Agreement with Movant for the purchase of a 2007 HONDA PILOT LX, vehicle ID# 5FNYF18107B005991 (collateral) (See Exhibit "A" attached hereto).

3. Said Motor Vehicle Retail Installment Sales Contract and Purchase Money Security Agreement was assigned to Movant which thereupon filed and perfected its liens on the collateral described herein by noting said lien on the Title (See Exhibit "B" attached hereto).

4. At the time of filing the Petition for Relief the Debtor was indebted to Movant in the amount of $19,121.77, and at present owes Movant for missed payments, the sum of $671.99. The value of the collateral is approximately $14,975.00. As such, after taking into account the cost of retaking, reconditioning, selling, attorney fees, etc., there is no equity in this collateral for either the Debtor or the Estate.

5.  The Debtor is delinquent on the accounts since November 22, 2012 and there has been no offer of adequate protection to Movant to protect the value of the collateral. Furthermore, the Debtor has no equity in said collateral and because this is not a Chapter 11 or Chapter 13, the requirement that the collateral is necessary for an effective reorganization is inapplicable. The Debtor has received his/her discharge and the Automatic Stay has been vacated as to him/her . AMERICAN HONDA FINANCE CORPORATION ("AHFC") is seeking to have the Stay lifted against the Estate's interest insofar as this matter is still open.

6.  Movant has incurred, or may incur, certain costs, including, without limitation, attorney fees, taxes, insurance premiums, court costs, costs of sale, and other costs, all of which are secured by the subject Motor Vehicle Retail Installment Sales Contract and Purchase Money Security Agreement.

LAW:

(A)  AUTOMATIC STAY:

Pursuant to 11 U.S.C. § 362(d) Movant is entitled to relief from the Automatic Stay to enforce its lien on either of two grounds: (1) for cause including lack of adequate protection of an interest in the Property, or (2) the Debtor hasno equity and the Property is not necessary to any effective reorganization. Implicit in the second of these is that, unless a reorganization is cotemplated and feasible, a creditor is entitled to relief from the automatic stay if the Debtor has no equity in the Property. E.G., Frankford Trust Company v. Dublin Property, (In re Dublin Properties), 4 C.B.C. 2d 885, 889 (E.D. Pa., Bankr., 1981).

On only one issue does a Movant requesting relief from the stay have the burden of proof and that is the issue of the Debtor equity in the Property. On all other issues

any party opposing relief has the burden of proof. 11 U.S.C. § 362(g). Unless a party opposing relief produces evidence on these points, a Movant is entitled to relief without presenting any evidence whatsoever. See <u>Gauvin v. Wagner (In re Gauvin)</u>, 8 C.B.C. 2d 359, 361, 10 BCD 219, 24 B.R. 578 (9th Cir BAP 1982). Moreover, if a party opposing relief alleges that an "equity cushion" furnishes adequate protection, then that party must produce evidence and carry the burden of proof even on the issue of equity. <u>Id.</u>

(B)    <u>PRELIMINARY HEARING:</u>

As noted above, any party resisting relief from the automatic stay or seeking to use property of the estate must carry the burden of proof on the issue of adequate protection. A party requesting relief from the stay receives it automatically 30 days after the date of its request unless the Court after notice and hearing orders the stay extended. 11 U.S.C. § 362(e). Moreover, at a preliminary hearing on a request to lift the stay, the Movant is entitled to relief unless the party resisting relief presents evidence and the Court finds that there is a "reasonable likelihood" the resisting party "will prevail at the final hearing." 11 U.S.C. § 363(c)(3) and § 362(e)(1). See <u>Dublin Properties</u>, 4 C.B.C. 2d at 889.

<u>REQUEST FOR RELIEF</u>:

For the reasons set forth above, Movant respectfully requests:

1.    That all stays, including without limitation, injunctions, restraining orders, and the automatic stays provided by 11 U.S.C. §362 and §524, be vacated with respect to the Property, or modified to permit Movant, or its agents, attorneys, employees and assigns and such other persons as the Court shall deem appropriate to take any and all actions to enforce its claim to and assert its ownership rights to the Property under the subject Contract, and non-bankruptcy law, including without limitation the rights: to

declare all sums to be immediately due and payable; and to obtain possession of the property, either through self-help or an action in any Court of competent jurisdiction.

2. Movant is also requesting that the Court allow Movant to immediately secure its collateral/property without having to wait ten days from the date of this Order as otherwise required under Rule 7062. Good cause exist for this insofar as the property which is in question is both depreciable and mobile and there is always concern by Movant with reference to this type of property concerning the continued use by the Debtor when payments are not being made. Movant has no objection to waiting ten days with reference to the sale after entry of Order.

CONCLUSION:

For the reasons set forth herein, Movant requests entry of an Order Modifying Stays against lien enforcement; and granting such other and further relief as is just.

RESPECTFULLY SUBMITTED this January 9, 2013.

**CHARLES L. FIRESTEIN, P.C.**

/s/ Charles L. Firestein  #002986
Charles L. Firestein, Esq.
Attorney for Movant

# RETAIL INSTALLMENT SALE CONTRACT
## SIMPLE FINANCE CHARGE

**STOCK**
DEAL 586626
Dealer Number _____ Contract Number _____

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Creditor-Seller (Name and Address) |
|---|---|---|
| ELIZABETH A HARKISON<br>PO BOX 51873<br>MESA, AZ 85208 | | SHOWCASE HONDA<br>1500 E. CAMELBACK ROAD<br>PHOENIX, AZ 85014 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Creditor - Seller (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used/Demo | Year | Make and Model | Odometer | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| USED | 2007 | HONDA PILOT | 86732 | 5FNYF18107B005991 | X personal, family or household<br>☐ business<br>☐ agricultural |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $200.00 |
|---|---|---|---|---|
| 6.99 % | $ 6047.66 | $ 26206.90 | $ 32254.56 | $ 32454.56 |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | 447.98 | Monthly beginning 12/22/2009 |

Or As Follows: _____

**Late Charge.** If payment is not received in full within 10 days after it is due, you will pay a late charge of $12.00 or 5% of the part of the payment that is late, whichever is less. If the vehicle is purchased for commercial use, the late charge is 6% of the part of the payment that is late.
**Prepayment.** If you pay off all your debt early, you will not have to pay a penalty.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

### ITEMIZATION OF AMOUNT FINANCED

1. Cash Price
    A. Cash Price of Motor Vehicle (including accessories, services) ........ $ 21028.90
    B. Sales Tax ............................................. $ 1745.40
    C. Prior Credit or Lease Balance paid by Seller to
       N/A .................................................. $ N/A
    D. Other _____ $ N/A
    E. Other _____ $ N/A
    F. Other _____ $ N/A
    G. Other _____ $ N/A
    H. Other _____ $ N/A
    Total Cash Price (A through H) ............................. $ 22774.30 (1)

2. Total Downpayment =
    Trade-In _____ (Year) (Make) (Model)
    Gross Trade-In Allowance ................................. $ N/A
    Less Pay Off Made By Seller ............................... $ N/A
    Equals Net Trade In ....................................... $ 200.00
    + Cash ................................................... $ N/A
    + Other _____ $ N/A
    (If total downpayment is negative, enter "0" and see prior credit or lease balance, item 1C, above) $ 200.00 (2)

3. Unpaid Balance of Cash Price (1 minus 2) ..................... $ 22574.30 (3)

4. Other Charges Including Amounts Paid to Others on Your Behalf
    (Seller may keep part of these amounts):
    A. Cost of Optional Credit Insurance Paid to the Insurance
       Company or Companies
       Life .......................... $ N/A
       Disability .................... $ N/A ............. $ N/A
    B. Other Optional Insurance Paid to Insurance Company or Companies ... $ N/A
    C. Optional Gap Contract ................................ $ 700.00
    D. Official Fees Paid to Government Agencies .............. $ N/A
    E. Government Taxes Not Included in Cash Price ........... $ 425.00
    F. Government License and/or Registration Fees
       (kind) MVE/REG/TIRE/POSTAGE .......................... $ 8.00
    G. Government Certificate of Title Fees .................. $ 4.60
    H. Other Charges (Seller must identify who is paid and describe purpose)
       SHOWCASE HONDA for Documentation Fees ................ $ 395.00
       SHOWCASE HONDA for MBP OR OTHER PLANS ................ $ 2100.00
       N/A for N/A .......................................... $ N/A
       N/A for N/A .......................................... $ N/A
       N/A for N/A .......................................... $ N/A
       N/A for N/A .......................................... $ N/A
    Total Other Charges and Amounts Paid to Others on Your Behalf ... $ 3632.60 (4)

5. Amount Financed (3 + 4) ................................. $ 26206.90 (5)

If the "Amount Financed" exceeds $25,000 or if the motor vehicle is primarily for commercial use, the "Amount Financed" is the "Final Cash Price Balance" and the "Total of Payments" is also the "Time Balance."

### Insurance section (right column)

You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit. If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

Check the insurance you want and sign below.

**Optional Credit Insurance**
☐ Credit Life: ☐ Buyer ☐ Co-Buyer ☐ Both
☐ Credit Disability (Buyer Only)
Premium:
Credit Life $ N/A
Credit Disability $ N/A
Insurance Company Name
N/A
Home Office Address
N/A

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

**Other Optional Insurance**
☐ N/A _____ N/A
  Type of Insurance    Term
Premium $ N/A
Insurance Company Name
N/A
Home Office Address
N/A

☐ N/A _____ N/A
  Type of Insurance    Term
Premium $ N/A
Insurance Company Name
N/A
Home Office Address
N/A

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.

I want the insurance checked above.

X _____ _____
Buyer Signature           Date

X _____ _____
Co-Buyer Signature        Date

**Returned Check Charge:** You agree to pay a charge of $25, plus actual charges assessed by a financial institution, if any check you give us is dishonored.

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in Item 4C of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term 72 Mos.
OLD UNITED LIFE GAP
Name of Gap Contract

I want to buy a gap contract.
Buyer X _Harkison_ (signature)

---

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before
_____ , Year _____ . SELLER'S INITIALS _____

### FOR USED VEHICLES ONLY
The Seller hereby warrants that this vehicle will be fit for the ordinary purposes for which the vehicle is used for 15 days or 500 miles after delivery, whichever is earlier, except with regard to particular defects disclosed on the first page of this agreement. You (the purchaser) will have to pay up to $25.00 for each of the first two repairs if the warranty is violated.

**ATTENTION PURCHASER: SIGN HERE ONLY IF THE DEALER TOLD YOU THAT THIS VEHICLE HAS THE FOLLOWING PROBLEM(S) AND THAT YOU AGREE TO BUY THE VEHICLE ON THOSE TERMS:**
**ATENCION COMPRADOR: FIRME AQUI SOLAMENTE SI EL VENDEDOR TE HA DICHO QUE EL VEHICULO TIENE EL SIGUIENTE PROBLEMA(S) Y QUE USTED ESTA DE ACUERDO DE COMPRAR EL VEHICULO BAJO ESTOS TERMINOS:**

1. _____ 2. _____ 3. _____

X _____ (Date) _____   X _____ (Date) _____
Buyer Signs                                Co-Buyer Signs

### WARRANTIES
Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties on the vehicle, except as described above for used vehicles. Making no warranties means that the Seller is selling the vehicle as is – not expressly warranted or guaranteed and without any implied warranties of merchantability (except as described above) or of fitness for a particular purpose. This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

☐ IF THE BOX IS CHECKED, THIS CONTRACT IS SUBJECT TO A BROKER FEE PAID BY THE SELLER TO _____

### NO COOLING OFF PERIOD
State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

You acknowledge an express intent to grant a security interest in the vehicle and hereby waive and abandon all personal property exemptions granted upon the vehicle, which is the subject of this contract. NOTICE: BY GIVING US A SECURITY INTEREST IN THE VEHICLE, YOU WAIVE ALL RIGHTS PROVIDED BY LAW TO CLAIM SUCH PROPERTY EXEMPT FROM PROCESS.

HOW THIS CONTRACT CAN BE CHANGED. This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding. Buyer Signs X _Harkison_ Co-Buyer Signs X _____

If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.

NOTICE TO THE BUYER: (1) Do not sign this contract before you read it or if it contains any blank spaces. (2) You are entitled to an exact copy of the contract you sign.

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract, and retain its right to receive a part of the Finance Charge.*

YOU ACKNOWLEDGE THAT YOU HAVE READ BOTH SIDES OF THIS CONTRACT, INCLUDING THE ARBITRATION CLAUSE ON THE REVERSE SIDE, BEFORE SIGNING BELOW.

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.

ANY INSURANCE REFERRED TO IN THIS CONTRACT DOES NOT INCLUDE LIABILITY COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS.

The Arizona Department of Financial Institutions regulates the Seller and can be contacted at 2910 North 44th Street, Suite 310, Phoenix, Arizona 85018, (602) 255-4421, if you have any complaints concerning this contract.

X _Harkison_ 11/07/2009    SHOWCASE HONDA 11/07/2009
Buyer Signs   Date          Seller Signs    Date
                            by X _____   BUS MGR

X _____ _____
Co-Buyer Signs           Date

### SEE BACK FOR OTHER IMPORTANT TERMS AND AGREEMENTS.

Co-Buyers and Other Owners – A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here X _____ Date _____ Address _____

Seller assigns its interest in this contract to AHFC (Assignee) under the terms of Seller's agreement(s) with Assignee.

☐ Assigned with recourse    ☐ Assigned without recourse    ☐ Assigned with limited recourse

ORIGINAL LIENHOLDER

OTHER IMPORTANT AGREEMENTS

1. **FINANCE CHARGE AND PAYMENTS**
   a. How we will figure Finance Charge. We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed with a day counted as 1/360th of a year (or 1/365th in a leap year).
   b. How we will apply payments. We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed or to other amounts you owe under this contract in any order we choose.
   c. How late payments or early payments change what you must pay. We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment, or at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.
   d. You may prepay. You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

2. **YOUR OTHER PROMISES TO US**
   a. If the vehicle is damaged, destroyed, or missing. You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.
   b. Using the vehicle. You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.
   c. Security Interest.
      You give us a security interest in:
      • The vehicle and all parts or goods put on it;
      • All money or goods received (proceeds) for the vehicle;
      • All insurance, maintenance, service, or other contracts we finance for you; and
      • All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.
      This secures payment of all you owe on the contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle.
   d. Insurance you must have on the vehicle.
      You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the cost of the insurance and a finance charge equal to the Annual Percentage Rate shown on the front of this contract, or, at our option, the highest rate the law permits. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.
   e. What happens to returned insurance, maintenance, service, or other contract charges. If we get a refund of insurance, maintenance, service, or other contract charges, we will subtract the refund from what you owe.

3. **IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**
   a. You may owe late charges. You will pay a late charge on each late payment as shown on the front. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.
      If you pay late, we may also take the steps described below.
   b. You may have to pay all you owe at once. If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
      • You do not pay any payment on time;
      • You give us false, incomplete, or misleading information on a credit application;
      • You start a proceeding in bankruptcy or one is started against you or your property; or
      • You break any agreements in this contract.
      The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.
   c. Debtor's Liability for Failure to Return Vehicle: If you are in default, we may send you a notice of default. It is unlawful to fail to return a motor vehicle subject to a security interest within 30 days after receiving notice of default. A notice of default may be mailed to the address on the contract. It is your responsibility to keep the listed address current. Unlawful failure to return a motor vehicle subject to a security interest is a class 6 felony. Assuming there are no aggravating circumstances, and you have no prior felony convictions, the maximum penalty is 1 year in prison and a $150,000 fine.
   d. You may have to pay collection costs. If we hire an attorney to collect what you owe, you will pay the attorney's fee and court costs as the law allows. You will also pay any reasonable collection costs we incur as the law allows.

e. We may take the vehicle from you. If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.
f. How you can get the vehicle back if we take it. If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.
g. We will sell the vehicle if you do not get it back. If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.
   We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us unless the law provides otherwise. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.
h. What we may do about optional insurance, maintenance, service, or other contracts. This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

4. Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.
   Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

5. Applicable Law
   Federal law and the law of the state of the Seller's address shown on the front of this contract apply to this contract.

6. **SELLER'S RIGHTS IN ABSENCE OF CREDIT APPROVAL:**
   (a) You agree to furnish us any documentation necessary to verify information contained in the credit application. (b) You acknowledge that it may take a few days for us to verify your credit and assign this contract. In consideration of our agreeing to deliver the vehicle, you agree that if we are unable to assign the contract to any one of the financial institutions with which we regularly do business pursuant to terms of assignment acceptable to us, we may cancel this contract. (c) In the event we cancel this contract, we shall give you notice of the cancellation. Upon receipt of such notice, you shall immediately return the vehicle to us in the same condition as when sold reasonable wear and tear excepted, and this contract shall then be deemed cancelled. We agree, upon cancellation of this contract to restore to you all consideration we received in connection with this contract, including any trade-in vehicle. (d) In the event the vehicle is not immediately returned to us upon notice of our cancellation of this contract, you agree to pay and shall be liable to us for all expenses incurred by us in obtaining possession of the vehicle, including attorney's fees, and we shall have the right to repossess the vehicle with free right of entry wherever the vehicle may be found, as the law allows. (e) While the vehicle is in your possession, all terms of this contract, including those relating to use of the vehicle and insurance for the vehicle shall be in full force and all risk of loss or damage in the vehicle shall be assumed by you, you shall pay all reasonable repair costs related to any damage sustained by the vehicle while in your possession or control at and until the vehicle is returned to us.

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

The preceding NOTICE applies only if the "personal, family or household" box in the "Primary Use for Which Purchased" section of this contract is checked. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

### GUARANTY

The undersigned, jointly and severally, guarantee payment of all amounts owing under this contract and the payment upon demand of the entire amount owing on this contract in the event of default in payment by Buyer named herein. The undersigned waives notice of performance, demands for performance, notice of non-performance, protests, notice of protest, notice of dishonor, notice of acceptance of this Guaranty, of any acceptance in time of payment, of sale of any of the collateral and of all other notices to which the undersigned would be otherwise entitled by law and agrees to pay all amounts owing thereunder upon demand, without requiring any action or proceeding against Buyer, and specifically waives any right to require action against Buyer as provided in A.R.S. §§ 12-1641 et seq. The undersigned agrees to deliver to Seller or, after assignment, to Assignee timely financial statements and any other information relating to the undersigned's financial condition as may be reasonably requested. The undersigned acknowledges receipt from the Seller, prior to signing below, of a separate "Notice to Cosigner."

| DATED AT | GUARANTOR |
|----------|-----------|
| DATED AT | GUARANTOR |

Marital Community Property Joinder: The undersigned spouse of the Guarantor joins in the execution of this guaranty for the purpose of binding the marital property of the Guarantor, and the undersigned, in accordance with A.R.S. § 25-214 or other applicable law. THE UNDERSIGNED SPOUSE OF THE GUARANTOR ACKNOWLEDGES RECEIPT FROM THE SELLER, PRIOR TO SIGNING BELOW, OF A SEPARATE "NOTICE TO COSIGNER."

| Date | Spouse of the Guarantor |

### ARBITRATION CLAUSE
**PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS**

1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Clause, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Clause shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose one of the following arbitration organizations and its applicable rules: the National Arbitration Forum, Box 50191, Minneapolis, MN 55405-0191 (www.arb-forum.com), the American Arbitration Association, 335 Madison Ave., Floor 10, New York, NY 10017-4605 (www.adr.org), or any other organization that you may choose subject to our approval. You may get a copy of the rules of these organizations by contacting the arbitration organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law in making an award. The arbitration hearing shall be conducted in the federal district in which you reside unless the Creditor-Seller is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will advance your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $2500, which may be reimbursed by decision of the arbitrator at the arbitrator's discretion. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Clause, then the provisions of this Arbitration Clause shall control. The arbitrator's award shall be final and binding on all parties, except that in the event the arbitrator's award for a party is $0 or against a party in excess of $100,000, or includes an award of injunctive relief against a party, that party may request a new arbitration under the rules of the arbitration organization by a three-arbitrator panel. The appealing party requesting new arbitration shall be responsible for the filing fee and other arbitration costs subject to a final determination by the arbitrators of a fair apportionment of costs. Any arbitration under this Arbitration Clause shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration.

You and we retain any rights to self-help remedies, such as repossession. You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, appealed or removed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies or filing suit. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Clause shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Clause, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Clause shall be unenforceable.

Form No. 553-AZ-ARB (7/05)

# ARIZONA CERTIFICATE OF TITLE

**Motor Vehicle Division**
48-7200 R10/08 www.azdot.gov

Inventory Control
**15530421**

| Vehicle Identification Number | Year | Make | Model | Body Style |
|---|---|---|---|---|
| 5FNYF18107B005991 | 2007 | HOND | POX | 4DSW |

| First Registered | List Price | Mobile Home Manufacturer | Unit Number |
|---|---|---|---|
| 02/2007 | 028395 | | |

AMERCN HONDA FIN CORP
P O BOX 997500
SACRAMENTO CA 95899-7509

| Title Number | Issue Date | Film Number | Odometer Miles (no tenths) |
|---|---|---|---|
| 045H009349056 | 12152009 | J349045H25 | 0036732 A |

* A - Actual Mileage
  B - Mileage in excess of the odometer mechanical limits
  C - NOT Actual Mileage, WARNING ODOMETER DISCREPANCY

| Previous Title Number | State | Issue Date | Previous Film Number |
|---|---|---|---|
| 66AK009017010 | AZ | 01172009 | J0170CAK05 |

Arizona Brands

| Previous Brand | State | Previous Brand | State | Previous Brand | State | Other States With Brands |
|---|---|---|---|---|---|---|

ADDITIONAL BRAND INFORMATION WILL BE PRINTED HERE IN THE FUTURE.

**Owners/Lessees**
ELIZABETH A HARKISON

PO BOX 51873                 MESA              AZ 852080094

**Lienholders**
FIRST LIEN-
AMERCN HONDA FIN CORP          LIEN DATE: 11072009
P O BOX 997509                 SACRAMENTO        CA 958997509

**LIEN RELEASE**

| Lienholder Name | | Acknowledged before me this date. | Notary Public Signature | | |
|---|---|---|---|---|---|
| Lien Amount | Lienholder Signature | Date | County | State | Commission Expires |

VOID WITHOUT EAGLE WATERMARK OR IF ALTERED OR ERASED

Exhibit B